Martin, J,
delivered the opinion of the *236 court.* The defendants, sued on their promissory note, endorsed to the plaintiff before its maturity, pleaded that it was given for the price of a tract of land, which the plaintiff’s endorser sold to them without his having any right to do so, and that the plaintiff had notice of this, as the note was signed ne varietur by the notary.
West’n District.
August, 1822.
The plaintiff had judgment, and the defendants appealed.
This case is not easily distinguishable, as to the first objection, from that of Hubbard & al. vs. Fulton's heirs, 9 Martin, 87, in which we determined that “ although the matter, pleaded in avoidance of the claim, would have affected it in the hands of the original payee, it could not do so in those of a fair endorsee.”
The defendants’ counsel has, however, endeavoured to distinguish it. He holds, that “ the holder must have known that the consideration of the note was the land sold, and so took it, subject to the defence relating to the land; and from all the circumstances, the defendants’ equitable defence must be let in.”
He cites, in support of his position, the case *237 of Ayers vs. Hutchins & al., 4 Mass. Rep. 370. Bigelow's Digest, 501, in which the court held, that "if the endorsee of a negotiable note receive it under circumstances which might reasonably excite suspicion that the note is not good; he ought, before he takes it, inquire into its validity; and if he do not, he must take it subject to any legal defence which might be made to a recovery by the promisee."
We cheerfully recognise the exception, which this case makes to the general proposition, which was the basis of our decision in that quoted: and our only inquiry, in the present, must be whether the note or its transfer was attended with any circumstance that might reasonably create suspicion.
The counsel presents as one, the appearance of the words ne varietur, on the face of the note, with a date and the signature of a notary. We are unable to discover how the appearance of these words could reasonably create suspicion.
Generally they are written on instruments to ascertain their identity at a subsequent period. On promissory notes, like the present, they are of great use in facilitating the cancelling or raising a mortgage, given to se *238 cure the payment of the sum mentioned in the note. They may serve in pointing out the notary, in whose office will be found the act which contains the evidence of the contract, in which the note originated.
The case determined in Massachusetts, on which the defendants' counsel relies, recognises the obligation of a person to whom a negotiable note is offered, to make any inquiry into its validity, to the only case in which circumstances reasonably create suspicion. The circulation of notes would be much checked and embarrassed, if it were believe to be the duty of any person, who receives one, to inquire into the fairness of the transaction in which it originated, wherever the signature of a subscribing witness or of a notary afforded the opportunity of doing so. Nothing, in our opinion, imposes the obligation of such an inquiry, but the knowledge of such circumstances as reasonably create suspicion.
In the present no such circumstance is alleged, except the notice conveyed on the face of the note.
The plaintiff, on receiving the note, was thereby informed it had been thought proper to identify it, and that he might be informed of *239 the transaction in which it was given by examining the minutes of a given day, in a particular notary’s office. Were we to say, that it was his duty in such a case to make the inquiry, we would likely be bound to say that the subscription of a witness to a note imposes the same obligation, since it generally affords the same facility. No one can contend that it does.
It is, however, urged that the vendees, in requiring the identification of his note, secured the right of resisting payment, on just grounds, even after a fair endorsement, as he thereby gave notice to all endorsees that the note was the consideration of the sale. In some instances the maker of a note mentions therein what he has received as the consideration of his promise, using the expression value received in a horse, a slave, or in merchandise, or the like. Yet, it never was contended that the circumstance of the endorsee being thereby apprized that the note was given to secure the payment of a horse, a slave, or goods, placed him in a different situation than if the note was, in the ordinary way, for value received; that he was bound to ascertain whether any redhibitory vice in the slave, &c. pro *240 tected the maker. Now the knowledge that land was received as the consideration of the note, cannot vary the case. It creates no reasonable suspicion.
Had the plaintiff, before he took the note, called on the notary and examined the act which contains the evidence of the contract in which the note originated, he would have learned that it was given to secure the payment of the price of a tract of land, which the maker of the note had purchased from the person who offered to endorse it. This would have dispelled, rather than created suspicion.
It is true, the purchaser of a tract of land, who has given a negotiable note to secure the payment of its price, may resist the claim of his vendor, if he have been, in the mean while, evicted. But the very circumstance of his giving such a note, is evidence of his consent to forego this right, if the note be fairly endorsed away before maturity.
The purchaser of a horse, a slave, a ship, of goods, a borrower of money, are precisely in the same situation, as long as the claim remains in the hands of the vendee; they may oppose to it any fair means of defence. But if a negotiable note was given *241 and endorsed over before maturity, the claim of the endorsee cannot be resisted, on account of any circumstance of which he had no knowlege.
Since the establishment of banks in this state, vendors have often found, in the negotiable paper of vendees, a very easy and speedy mode of receiving the price of property sold on a credit. The latter, no doubt, found therein some diminution in the price, which would not have been yielded, if the former had not thereby been enabled to receive their money, before payment was effected by the latter.
In the present case, the notarial act particularly and formally states, that notes were given for the express purpose of enabling the plaintiff’s endorser to anticipate the receipt of the purchase-money. This the vendor might fairly stipulate for, and the vendee, by acceding to the stipulation, forewent the right of resisting the claim of an endorsee, and retained only a claim against the vendor.
Nothing enables this court, and justice forbids, to place either of the parties in a different situation than that in which the contract, he acceded to, places him.
Brownson for the plaintiff, Brent and Cuvillier for the defendants.
It is therefore ordered, adjudged and decreed, that the judgment of the district court affirmed with costs.

 Porter, J. did not join in this opinion, having been of counsel in the case.